Case 2:22-cv-00133   Document 17   Filed on 10/04/22 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
October 04, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00133 |
| | § | |
| CHRISTOPHER CARTER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts claims against Defendants under the Eighth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For the reasons set forth below, the undersigned recommends that: (1) Plaintiff's § 1983 claims for money damages against the State of Texas and Christopher Carter and Bobby Lumpkin in their official capacities be DISMISSED as barred by the Eleventh Amendment; and (2) Plaintiff's Eighth Amendment and ADA/RA claims against Christopher Carter and Bobby Lumpkin in their respective individual and official capacities be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C.

§§ 1915(e)(2)(B) and 1915A(b)(1). The undersigned recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

### A. Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. Background.

#### 1. Plaintiff's present § 1983 action.

Plaintiff filed this civil rights action on June 17, 2022. (Doc. No. 1.) Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues the following defendants: (1) Christopher Carter, TDCJ's Rehabilitative Program Division Director ("Carter"); (2) TDCJ Director Bobby Lumpkin ("Lumpkin"); and (3) the State of Texas (the "State") (collectively, "Defendants"). Plaintiff generally claims that Defendants violated his Eighth Amendment and ADA/RA rights in connection with the denial of proper treatment and reasonable accommodations for his alleged alcoholism. (Doc. No. 1, p. 4.) Plaintiff seeks monetary relief. *Id.*; Doc. 15, pp. 28-29.

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

### *2. The September 1, 2022* Spears *hearing.*

On September 1, 2022, the undersigned conducted a *Spears*[2] hearing in which Plaintiff was given an opportunity to explain his claims. The following representations were made either in Plaintiff's Original Complaint (Doc. No. 1) or at the *Spears* hearing.

Plaintiff testified that his alcoholism led to convictions for driving while intoxicated (DWI).[3] (Doc. No. 15, p. 7.) In the "free world," Plaintiff typically consumed alcohol three to four times per week until he became intoxicated on each occasion. *Id.* Plaintiff has not been formally diagnosed with alcoholism. *Id.* at 8. However, Plaintiff testified that while he was confined at a Substance Abuse Felony Punishment (SAFP) facility after his conviction,[4] a counselor informed Plaintiff that an individual is defined under the Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition (DSM-5) as being an alcoholic if his or her condition leads to legal problems. *Id.*[5]

Plaintiff claimed the last alcoholic beverage he consumed was three weeks before the *Spears* hearing, in the form of "homemade wine" concocted at the unit. (Doc. No. 15, p. 8.)

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] According to TDCJ records, Plaintiff was convicted of two DWI charges in Dallas County. *See* https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05193617. On May 27, 2021, Plaintiff was sentenced to ten years in prison. *Id.*

[4] A SAFP facility "provide[s] services to qualified offenders identified as needing substance use treatment." *Neal v. Texas*, No. 4:19-CV-859, 2020 WL 5262529, at *1, n.1 (E.D. Tex. July 30, 2020), *adopted* 2020 WL 5258336 (E.D. Tex. Sep. 3, 2020). "The trial court may . . . require . . . that the defendant serve a term of confinement and treatment in a [SAFP facility] if the court makes an affirmative finding that drug or alcohol abuse significantly contributed to the commission of the offense and the defendant is a suitable candidate for treatment." *McElyea v. State*, No. 10-19-00295-CR, 2020 WL 1429663, at *1 (Tex. App.—Waco Mar. 23, 2020) (mem. op., not designated for publication).

[5] DSM-5, unlike its 1994 predecessor, DSM-4, does not contain any such criterion linking alcoholism with legal problems. In fact, DSM-5 does not list "alcoholism" as a disorder at all, terming alcohol-related disorders as "alcohol use disorder," with subclassifications of severity. *See* DSM-5 § 2.H.16 (2013). The Court recognizes, however, that Plaintiff was recounting what he was told, and is construing his pleadings and allegations liberally.

Plaintiff stated that he only had one drink and did not become intoxicated. *Id.* at 9. Before that single occasion, Plaintiff last consumed an alcoholic drink in May 2020. *Id.* Plaintiff does not take any medication in connection with his alcoholism. *Id.* Plaintiff testified that he filed this lawsuit for the purpose of obtaining a treatment plan for his alcoholism. *Id.* at 9-10.

Plaintiff believes his alcoholism causes him to have certain urges as well as nightmares. (Doc. No. 15, p. 10.) Plaintiff further believes that his alcoholism affects his attitude toward other people, causes him to become mean when he cannot get a drink, and prevents him from coping. *Id.* According to Plaintiff, his alcoholism affects and exacerbates his diagnosed mental health disorders, which he identifies as PTSD, schizophrenia, and major depressive disorder with psychotic features. *Id.* Lastly, Plaintiff contends his alcoholism impacts his ability to concentrate, think, read, and sleep. *Id.* at 10-11.

Plaintiff states that TDCJ has four different programs to treat alcoholism. (Doc. No. 15, p. 11.) Plaintiff requested to be a part of one program, which he referred to as the "DWI program." *Id.* Plaintiff filed a grievance to seek access to this program but was denied because he did not meet certain criteria. *Id.* at 11, 19. Plaintiff stated that he was not informed what those criteria were. *Id*. at 11.

With respect to his deliberate indifference and ADA/RA claims, Plaintiff sues Carter in his individual and official capacities. (Doc. No. 15, p. 24.) Plaintiff testified that Carter "creates the policies and the procedures for all programs within the TDCJ system." *Id.* at 12. While Program Director Carter has not personally treated Plaintiff for alcoholism, Plaintiff contends that Carter has implemented policies that are deliberately indifferent to Plaintiff's alcoholism. *Id.* at 12-13. Plaintiff further states that he is subjected to intentional discrimination under the

ADA/RA because Carter has not implemented policies to treat his alcoholism, which is a handicapping condition. *Id.* at 13.

Although unable to identify any specific written TDCJ policies, Plaintiff testified that the absence of certain policies and practices have caused him harm. (Doc. No. 15, pp. 16-19.) Therefore, Plaintiff urged the following policies to be adopted: (1) providing medical screening to determine the level of treatment necessary for alcoholic and substance abusers; (2) training medical staff to provide such assessment as well as providing psychotherapy and psychological counseling for alcoholic and substance abusers; and (3) acting upon the requests of individuals who require extensive treatment. *Id.* Plaintiff further testified that one standing policy or practice has caused him harm. *Id.* at 19. That requirement is allegedly set forth in a response to one of Plaintiff's grievances—that Plaintiff meet certain criteria for entrance into the DWI program. *Id.*

According to Plaintiff, Carter has provided him with no reasonable accommodations to participate in any type of rehabilitative DWI program. (Doc. No. 15, pp. 13, 20.) Plaintiff believes that acquiring treatment for his alcoholism is important so that, after his release into the "free world," prospective employers will not discriminate against him. *Id.* at 20-21.

Plaintiff testified that he is confined to a cell 24 hours a day, because he was charged with assaulting an officer with a food tray. (Doc. No. 15, pp. 21-22.) Plaintiff's alleged alcoholism does not impede his ability to access the dining facility, as all of his meals are brought to him. *Id.* Plaintiff indicated that he also has access to medical treatment upon submitting a "medical call," although doing so apparently can be challenging. *Id.* at 22. Plaintiff also has legal materials brought to him from the unit's law library. *Id.* at 22-23. And despite being physically

able to attend religious services, Plaintiff is prevented from attending such services because of his custody level, which prevents him from leaving his cell. *Id.* at 23.

In his original complaint, Plaintiff claims that Lumpkin violated his ADA/RA rights. (Doc. No. 1-1, pp. 3-4.) Plaintiff testified at the *Spears* hearing that Lumpkin adopted and promoted unconstitutional practices and customs that caused Plaintiff harm. (Doc. No. 15, p. 26.) Plaintiff specifically cites the same alleged policy that prevented Plaintiff from gaining admission to the DWI program based on certain unenumerated criteria. *Id.* at 27. In connection with his ADA/RA claims against Lumpkin and Carter, Plaintiff seeks a "reasonable accommodation" in the form of admission into the DWI program. *Id.* at 27. Plaintiff sues Lumpkin in his individual and official capacities. *Id.* at 27-28.

Lastly, Plaintiff claims in his original complaint that the State of Texas violated his ADA/RA rights. (Doc. No. 1, p. 3.) Plaintiff testified that the State adopted "the policy of [Plaintiff] not being able to enroll in a DWI class," which he claims is a violation of his constitutional rights. (Doc. No. 15, p. 28.)

Plaintiff reiterated at the *Spears* hearing that he seeks monetary relief. *Id.* at 28-29.

## C. Legal standard.

When a prisoner seeks to proceed *in forma pauperis*, the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable

basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (citations omitted). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999) (*per curiam*). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Id.* (citations omitted). Thus, dismissal is inappropriate "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff must allege sufficient facts in support of his legal conclusions that give rise to a reasonable inference that Defendants are liable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Id.* at 555. If the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*. Further, as Plaintiff proceeds *pro se*, the Court construes his complaint liberally in his favor. *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

**D. Discussion: Plaintiff's claims are frivolous or fail to state a claim upon which relief may be granted. Plaintiff's case should be dismissed.**

**1. Plaintiff's § 1983 claims.**

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002) (*per curiam*).

**a. The Eleventh Amendment bars Plaintiff's § 1983 claims against the State, Carter, and Lumpkin in their official capacities.**

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974) (citations omitted).

This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court). Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd.*

*of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecomms, Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68-71 (1989).

Liberally construed, Plaintiff's *Spears* hearing testimony indicates that he seeks to raise a constitutional claim against the State of Texas under § 1983. The undersigned recommends, however, that Plaintiff's § 1983 claim against the State of Texas be dismissed as barred by the Eleventh Amendment.

Further, a suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Tex. Dep't of Crim. Just.,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is thus also barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver*, 276 F.3d at 742 (the Eleventh Amendment bars a prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues the individual defendants (Carter and Lumpkin) in their official capacities for monetary damages, those § 1983 claims are barred by the Eleventh Amendment.

Thus, the undersigned recommends that Plaintiff's claims for money damages against the individual defendants in their official capacities be dismissed.

> **b. Plaintiff's Eighth Amendment deliberate indifference claims against Carter and Lumpkin in their individual capacities are frivolous or fail to state a claim upon which relief may be granted.**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Here, Plaintiff claims that Carter and Lumpkin acted with deliberate indifference by promulgating or overseeing policies that have prevented him from gaining admission into a TDCJ DWI treatment program. (Doc. No. 15, pp. 12-13, 26.)

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, or when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. A prison official acts with deliberate indifference if he or she knows that an inmate faces a "substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (*per curiam*). "[A] prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citations omitted). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *See Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) (citing *Gobert*, 463 F.3d at 346). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Further, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). It is well-established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *E.g., Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). There is no vicarious or *respondeat superior* liability for supervisors under § 1983. *See id.* at 303-04; *Snow v. City of El Paso, Tex.*, 501 F. Supp. 2d 826, 835 (W.D. Tex. 2006) ("In a § 1983 action, a court cannot hold supervisory officials vicariously liable for the actions of their subordinates."); *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (the acts of

11 / 20

subordinates do not trigger individual § 1983 liability for supervisory officials). Rather, "the misconduct of a subordinate must be affirmatively linked to the action or inaction of the supervisor." *Snow*, 501 F. Supp. 2d at 835 (internal quotations and citations omitted). The Fifth Circuit has held that "[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *See, e.g., Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins*, 828 F.2d at 303). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sept. 30, 2015) (Werlein, J.) (citing *Iqbal*, 556 U.S. at 677).

Although neither had any personal involvement in treating Plaintiff for his alleged alcoholism, Plaintiff sues Carter and Lumpkin in their individual capacities, claiming they adopted or implemented policies and practices which were deliberately indifferent to Plaintiff's allegedly serious condition. (Doc. No. 15, pp. 12-13, 26.) Plaintiff makes no allegation that any particular act of theirs has caused him harm, but instead alludes to several policies and practices that he would like to see implemented regarding his ability to obtain treatment for his alleged alcoholism. Plaintiff complains that he was required to satisfy eligibility criteria[6] in order gain admission to TDCJ's DWI rehabilitation program. (Doc. No. 15, pp. 19, 27.) Liberally construed, the undersigned finds that Plaintiff's allegation is that the establishment of criteria for enrollment in the DWI program is constitutionally deficient.

---

[6] Indeed, such criteria may exist. They do exist with regard to parolees. *See* BPP-DIR. 145.305, *FI-6 DWI Program* (Sept. 1, 2021), pp. 2-3, available at https://www.tdcj.texas.gov/bpp/policies_directives/DIR_145.305.pdf.

"In the context of an alleged failure to provide adequate medical care, 'the existence of a constitutionally deficient policy cannot be inferred from a single wrongful act.'" *Cook v. Louisiana Workforce, L.L.C.*, No. 16-00587, 2017 WL 4322412, at *3 (M.D. La. Sept. 28, 2017) (quoting *Thompkins*, 828 F.2d at 304); *see also Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("Allegations of an isolated incident are not sufficient to show the existence of a custom or policy."). Additionally, to make out a claim of a constitutionally deficient policy, Plaintiff must allege either that "'the [prison's] treatment system had … failed to deliver necessary and appropriate medical care' to other inmates or that the supervisor was deliberately indifferent to the fact 'that the policy would expose prisoners to substantial risk of significant unmet serious medical needs.'" *Cook*, 2017 WL 4322412, at *3 (quoting *Thompkins*, 828 F.2d at 304).

Plaintiff's allegations, even accepted as true, fail to show that either Carter or Lumpkin implemented any unconstitutional policy that resulted in harm to Plaintiff. The policy identified by Plaintiff does not absolutely bar inmates from access to a DWI program. Instead, construing Plaintiff's allegations as liberally as possible, Plaintiff complains that the policy requires inmates to satisfy certain criteria to gain access. Alleging the existence of admissions criteria does not equate to an allegation that TDCJ's treatment system has denied necessary and appropriate medical care to other inmates. Nor does it equate to an allegation that prisoners would be exposed to a substantial risk of significant harm related to unmet medical needs. Plaintiff's complaint appears to be, rather, that he did not qualify under the criteria. Plaintiff has identified no other inmates with a history of alcoholism who were uniformly denied entrance into the DWI program based on their failure to meet the program's eligibility criteria or who were uniformly denied entrance based on certain unenumerated criteria. Further, Plaintiff only identifies a single

instance regarding the application of this policy—to himself. Nowhere in Plaintiff's allegations is any claim that the existence of admissions criteria for the DWI program would expose prisoners to a substantial risk of serious unmet medical needs.

In addition, Plaintiff's allegations reflect that he did receive treatment at a SAFP facility upon his conviction and that he has consumed one alcoholic beverage during his time in prison. (Doc. No. 15, pp. 8-9.)[7] Thus, Plaintiff's allegations reflect that it has been a long time since he abused alcohol. Plaintiff provides no allegations to suggest that: (1) the policy regarding admission into the DWI program exposed him and other inmates with a prior history of alcohol abuse to a substantial risk of harm, (2) either Carter or Lumpkin were aware that the policy placed Plaintiff and other inmates with a history of prior alcohol abuse at a substantial risk of harm, and (3) these defendants disregarded that risk by continuing to implement the policy. *See Cook*, 2017 WL 4322412, at *3.

Accordingly, the undersigned recommends that the Court dismiss with prejudice Plaintiff's deliberate indifference claims against Carter and Lumpkin in their individual capacities as frivolous or for failure to state a claim upon which relief may be granted.

### 2. Plaintiff's ADA/RA claims.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the RA, "[n]o qualified individual with a disability . . . shall, solely by

---

[7] Alcohol is considered contraband in TDCJ facilities. Plaintiff should not have had even one alcoholic drink while in prison. *See Disciplinary Rules and Procedures for Offenders*, Publication No. GR-106, Attachment A, ¶ 12.0 (2019). Nevertheless, Plaintiff makes no allegation that he suffered any harm from the drink. Plaintiff stated that inmates make wine in the prison and "I was testing somebody's out." (Doc. No. 15, pp. 8-9.)

reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private." *Borum v. Swisher Cty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (*per curiam*)). Courts utilize the same legal standards in analyzing claims under both the ADA and RA. *See Borum*, 2015 WL 327508, at *3 (citing *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011)). The undersigned, therefore, will analyze Plaintiff's ADA and RA claims as though they were raised as a single claim.

To establish a valid ADA claim, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA;[8] (2) he was excluded from participation in or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997).

---

[8] With respect to an individual, the term "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A)). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Further, "ADA regulations generally require an individualized determination of disability based on whether the condition 'substantially limits an individual in a major life activity,' that is, categorical exclusions do not necessarily exist in the ADA term 'disability.'" *Peña Arita v. County of Starr, Tex.*, No. 7:19-CV-00288, 2020 WL 5505929, at *4 (S.D. Tex. Sept. 11, 2020) (Alvarez, J.) (citations omitted).

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (*per curiam*) (quoting *Tennessee v. Lane*, 541 U.S. 509, 531 (2004)). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015).

In the prison context, "failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy v. Tex. Dep't of Crim. Just.*, No. C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006) (Jack, J.); *United States v. Georgia*, 546 U.S. 151, 156-57 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, [and] medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

On the other hand, the ADA is not violated by "a prison's simply failing to attend to the medical needs of disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the

ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'"). Thus, the ADA does not cover "the mere absence or inadequacy of medical treatment for a prisoner." *See Whetstone v. Hall*, No. 4:17cv158-JMV, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018). Instead, Plaintiff must show he was treated differently because of his qualified disability. *Nottingham*, 499 F. App'x at 376-77.

### a. Plaintiff cannot bring ADA/RA claims against Carter and Lumpkin in their individual capacities. Those claims should be dismissed.

Plaintiff sues Carter and Lumpkin in their individual capacities with respect to his ADA/RA claims. However, a plaintiff may not sue defendants in their individual capacities under the ADA. *See Nottingham*, 499 F. App'x at 376, n.6 (noting that under the ADA, a plaintiff may not sue the defendants in their individual capacities); *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022). Likewise, a plaintiff cannot sue a defendant in his individual capacity under the RA. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. July 27, 2021). Accordingly, the undersigned recommends that Plaintiff's ADA/RA claims against Carter and Lumpkin in their individual capacities be dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted.

### b. Plaintiff's ADA/RA claims against the State of Texas, Carter, and Lumpkin in their official capacities should be dismissed as frivolous or for failure to state a claim upon which relief may be granted.

Additionally, Plaintiff brings his ADA/RA claims against the individual defendants in their official capacities and against the State of Texas. The ADA does not itself "prohibit suit against both the State and its agencies." *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL

17 / 20

3966349, at *5 (N.D. Tex. June 29, 2018) (citing 42 U.S.C. § 12131(1)(a)-(b)).  The Fifth Circuit has further held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies (which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

Construing the pleadings liberally and accepting Plaintiff's allegations as true, the Court finds that Plaintiff sufficiently shows that he suffers from physical impairments that greatly limit his daily life activities, and that, at least for purposes of this screening, he is a "qualified individual with a disability."[9]  *See Peña Arita v. County of Starr, Tex.*, No. 7:19-CV-00288, 2020 WL 5505929, at *5 (S.D. Tex. Sept. 11, 2020) (Alvarez, J.) (in evaluating a motion to dismiss, the court explains that it cannot say definitely whether the individual suffered a disability, but that the court's role is to "interpret Plaintiffs' complaint as a whole and grant Plaintiffs every reasonable inference to determine whether Plaintiffs state a plausible claim for relief").

Plaintiff claims that his ADA/RA rights were violated when he was denied a reasonable accommodation for his alcoholism in the form of participating in a rehabilitative DWI program.  (Doc. No. 15, pp. 13, 20.)  Without this accommodation, Plaintiff asserts, he was effectively denied access to the services and activities available to him within the TDCJ system.  (Doc. No. 1-1, p. 1.)  But Plaintiff's allegations, even accepted as true, fail to state an ADA/RA claim.

---

[9] Plaintiff self-reports that he has been diagnosed with mental health disorders including PTSD, schizophrenia, and major depressive disorder with psychotic features.  (Doc. No. 15, p. 10.)  In addition to construing the pleadings liberally, the Court also reads the definition of "disability" broadly.  "The definition of 'disability' is broad and accommodating—an impairment that 'substantially limits' a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population."  *Peña Arita*, 2020 WL 5505929, at *4 (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590-91 (5th Cir. 2016)).

Plaintiff clarified in his *Spears* hearing testimony that: (1) his alcoholism does not impede his ability to access the dining facility; (2) all of his meals are brought to him while he is confined in restricted housing; (3) he can access the medical department after submitting a medical call; (4) he has access to legal materials; and (5) it is his custody level, not his alcoholism, that prevents him from attending religious services. (Doc. 15, pp. 21-23.). Plaintiff's testimony, therefore, belies any suggestion that the failure to treat his alleged alcoholism through enrollment in the DWI program denied him access to various TDCJ services and activities.

Regardless of how Plaintiff frames his ADA/RA claim, he essentially argues that he is being denied his requested medical treatment for his alcoholic condition. Plaintiff provides no specific facts to indicate how the decision to deny Plaintiff's enrollment in the DWI program was motivated by any disabilities related to Plaintiff's history of alcoholism. Rather than suggest he has been excluded from such treatment by reason of his alcoholism, Plaintiff's complaints center on the denial of his requested treatment for his alcoholism. *See Payne*, 2021 WL 3173902, at *2. "[N]either the ADA nor RA covers the mere absence or inadequacy of medical treatment for a prisoner." *Id.* (citing *Bryant*, 84 F.3d at 249; *Nottingham*, 499 F. App'x at 377).

Accordingly, the undersigned recommends that Plaintiff's ADA/RA claims against the State of Texas and the individual defendants in their official capacities be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### E. *Recommendation.*

For the reasons stated above, the undersigned recommends that: (1) Plaintiff's § 1983 claims for money damages against the State of Texas and Carter and Lumpkin in their official capacities be DISMISSED as barred by the Eleventh Amendment; and (2) Plaintiff's Eighth Amendment and ADA/RA claims against Carter and Lumpkin in their respective individual and

official capacities be DISMISSED with prejudice as frivolous or for failure to state a claim for relief pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).

Further, the undersigned recommends that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be INSTRUCTED to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

### F. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on October 4, 2022.

_____
MITCHEL NEUROCK
United States Magistrate Judge